# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | |
|---|---|
| Annmarie Serem, ) | Civil Action No. 1:13-cv-02705-JMC |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Annmarie Serem ("Plaintiff") filed this action seeking judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to 42 U.S.C. § 405(g).  (ECF No. 1.)

This matter is before the court for review of the Report and Recommendation of United States Magistrate Judge Shiva V. Hodges, issued in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(a) D.S.C.  (ECF No. 21.)  On September 22, 2014, the Magistrate Judge recommended affirming the Commissioner's final decision denying Plaintiff's claim for Disability Insurance Benefits ("DIB").  (Id. at 43.)  Plaintiff timely filed objections to the Magistrate Judge's Report and Recommendation, which objections are currently before the court.  (ECF No. 25.)  For the reasons set forth below, the court **ACCEPTS** the Magistrate Judge's recommendation and **AFFIRMS** the final decision of the Commissioner denying Plaintiff's claim for DIB.

    **I.**    **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

The relevant factual and procedural background of this matter is discussed in the Report and Recommendation.  (See ECF No. 21.)  The court concludes, upon its own careful review of

the record, that the Magistrate Judge's factual and procedural summation is accurate and incorporates it by reference. The court will only reference herein facts pertinent to the analysis of Plaintiff's claims.

Plaintiff was born on August 23, 1970 and is presently forty-four (44) years old. (ECF No. 12-5 at 7.) She filed an application for DIB on January 18, 2011, alleging disability since November 8, 2008, due to degenerative disc disease, chronic obstructive pulmonary disease, and osteonecrosis of the ankles and feet, and depression. (Id. at 7; see also ECF Nos. 12-3 at 5, 12-6 at 14.) Plaintiff's application was denied initially on March 25, 2011, and upon reconsideration on September 1, 2011. (ECF No. 12-4 at 10, 17.) As a result, Plaintiff requested an administrative hearing on September 9, 2011. (Id. at 19.) On May 23, 2012, Plaintiff had a hearing before an Administrative Law Judge ("ALJ"), Augustus C. Martin, who found on June 14, 2012, that Plaintiff was not under a disability as defined by the Social Security Act ("SSA") because she had the residual functional capacity to still perform her "past relevant work as a dental receptionist." (ECF Nos. 12-2 at 23, 35, 42 & 12-4 at 29.) Thereafter, the Appeals Council denied Plaintiff's request for review on August 23, 2013, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (ECF No. 12-2 at 2.)

Subsequently, on October 3, 2013, Plaintiff commenced an action in the United States District Court for the District of South Carolina pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the Commissioner's final decision denying Plaintiff's claim for DIB. (ECF No. 1.) On September 22, 2014, the Magistrate Judge issued her recommendation that the Commissioner's final decision denying Plaintiff's claim for DIB be affirmed. (ECF No. 21.) Plaintiff filed timely Objections to the Report and Recommendation of the Magistrate Judge on October 21, 2014. (ECF No. 25.) The Commissioner filed a Reply to Plaintiff's Objections to

the Report and Recommendation of the Magistrate Judge on November 4, 2014.  (ECF No. 26.)

## II.     LEGAL STANDARD

A.     The Magistrate Judge's Report and Recommendation

The magistrate judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with this court.  See Mathews v. Weber, 423 U.S. 261, 270–71 (1976).  The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to – including those portions to which only "general and conclusory" objections have been made – for clear error.  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1).

B.     Judicial Review of the Commissioner

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one.  Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).  "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964).  This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner.  See Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971).  The court must uphold the Commissioner's decision as long as it is supported by substantial evidence.  See Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir.

1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969). "The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." Id. "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational." Vitek, 438 F.2d at 1157–58.

### III.    ANALYSIS

A.    The Magistrate Judge's Review

In the Report and Recommendation, the Magistrate Judge first evaluated whether the ALJ properly assessed Plaintiff's complaints of pain and subjective symptoms. Upon her review, the Magistrate Judge concluded that the ALJ expressly complied with and considered the factors outlined in 20 C.F.R. § 404.1529(c) and SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996), in assessing Plaintiff's credibility.[1] (ECF No. 21 at 26–28.) In this regard, the Magistrate Judge observed that "[t]he ALJ considered Plaintiff's statements about symptoms with the rest of the relevant evidence, but concluded that Plaintiff's impairments were not significant enough to preclude her from performing all work." (Id. at 26.) Therefore, the Magistrate Judge recommended that the court find that substantial evidence supported the ALJ's findings regarding Plaintiff's credibility. (Id. at 28–29.)

---

[1] "20 C.F.R. § 404.1529(c) . . . describe[s] the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements: 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7p, 1996 WL 374186, at *3.

The Magistrate Judge next evaluated whether the ALJ properly considered the severity of Plaintiff's osteonecrosis of the left foot, avascular necrosis of the right ankle, and her depression. Although the ALJ misidentified osteonecrosis by calling it osteoarthritis and osteocerosis (see ECF No. 12-2 at 28, 30), the Magistrate Judge determined that the ALJ did adequately consider Plaintiff's diagnosis of osteonecrosis finding that "the ALJ's initial misclassification of the impairment did not lead him to assess lesser limitations than he would have assessed if he had classified the impairment correctly from the beginning." (ECF No. 21 at 32.) As to the apparent failure by the ALJ to identify avascular necrosis of the right ankle as a severe impairment at step two, the Magistrate Judge found that the error was harmless because the ALJ "subsequently discussed the impairment in subsequent steps." (Id. at 33 (referencing ECF No. 12-2 at 33) ("[T]he area was partially obsecured [sic!] by an area of adjacent avascular necrosis with multiple areas of avascular necrosis of the distal tibia, talus, and calcaneus . . . .").) Additionally, the Magistrate Judge concluded that substantial evidence supported the ALJ's conclusion that Plaintiff's depression was not a severe impairment due to the record of Plaintiff's infrequent complaints and treatment. (Id. at 35.)

The third issue evaluated by the Magistrate Judge concerned whether the ALJ considered Plaintiff's obesity in accordance with SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002).[2] Upon

---

[2] SSR 02-1p provides, in pertinent part, that

> [W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.
> . . .
> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect

her review, the Magistrate Judge determined that the ALJ adequately considered Plaintiff's obesity in accordance with SSR 02-1p based on the ALJ's finding that "obesity, in combination with Plaintiff's other impairments, imposed limitations on her abilities to lift, carry, stand, walk, operate foot controls, climb, perform other postural movements, and be exposed to hazards." (ECF No. 21 at 40 (citing ECF No. 12-2 at 31–35).)

Finally, the Magistrate Judge evaluated whether the ALJ complied with the requirements of SSR 82-62, 1982 WL 31386 (1982)[3], in finding that Plaintiff could return to her past relevant work ("PRW") as a dental receptionist. The Magistrate Judge found that the ALJ complied with SSR 82-62 because his decision contained findings of fact showing (1) Plaintiff's RFC, (2) the physical and mental demands of her PRW, and (3) how Plaintiff's RFC would permit a return to

---

> ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.
> . . .
> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.
> . . .
> As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.

Id. at 2002 WL 34686281, at *6–7.

[3] Under SSR 82-62, the "[d]etermination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy." Id. at 1982 WL 31386, at *3. If an individual is found to have the capacity to perform a past relevant job, "the determination or decision must contain among the findings the following specific findings of fact: 1. A finding of fact as to the individual's RFC[;] 2. A finding of fact as to the physical and mental demands of the past job/occupation[; and] 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation." Id. at *4.

her PRW. (ECF No. 21 at 42.) In this regard, the Magistrate Judge found that even though the ALJ erroneously concluded that Plaintiff was able to perform her PRW as actually performed, "when Plaintiff's description of her past work in her testimony suggested that she could not," the error was harmless because "the ALJ would have reached the same conclusion even if he had concluded that Plaintiff could not perform her PRW as actually performed." (Id.)

B.      Plaintiff's Objections and the Commissioner's Response

Objections to the Magistrate Judge's Report and Recommendation must be specific. See U.S. v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984) (failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge); see also Camby, 718 F.2d at 199 (in the absence of specific objections to the Report of the magistrate judge, this court is not required to give any explanation for adopting the recommendation).

In her first objection, Plaintiff argues that the Magistrate Judge erred when she found that substantial evidence supported the ALJ's credibility evaluation. (ECF No 25 at 1.) In support of this argument, Plaintiff asserts that if the Magistrate Judge would have given the record a fair reading, she would have recognized that the ALJ's credibility evaluation was not based on an accurate assessment of the factors outlined in 20 C.F.R. § 404.1529(c). More specifically, Plaintiff asserts that the Magistrate Judge failed to hold the ALJ accountable for not offering an explanation as to why he (1) rejected Plaintiff's testimony regarding the need to elevate her legs during the day and (2) disregarded without acknowledging Plaintiff's excellent work record. (ECF No. 25 at 4–6.) In addition, Plaintiff asserts that the ALJ evaluated Plaintiff's complaints to her treating physicians by only referencing days when Plaintiff had temporary improvement in her symptoms as opposed to the greater number of days where Plaintiff had persistent complaints

of severe pain in her back, feet, and ankles. (Id. at 2–3.) Plaintiff further asserts that the ALJ found that Plaintiff's pain was not disabling relying on observations that her treatment was conservative and she had not had surgery when the record shows that her "treatment included thirteen painful injections between August 2008 and March 2011 . . .; persistent use of Lidoderm pain patches and a wide variety of narcotic and analgesic medications in varying dosages in vain efforts to substantially diminish her pain, including Oxycontin, Percocet, Lortab, Meloxicam, Neurontin and Flexeril . . .; and even expressing a willingness to undergo ankle replacement operations to relieve her pain." (Id. at 4.) Finally, Plaintiff asserts that the ALJ's usage of her daily activities to discount her allegations of disabling pain "is a complete distortion of what the record in its entirety reflects on the issue of her day-to-day functioning." (Id. at 6.) Based on the foregoing, Plaintiff prays that the court will find that "the ALJ's credibility findings are not supported by substantial evidence." (Id. at 8.)

In her second objection, Plaintiff argues that the Magistrate Judge erroneously endorsed the ALJ's finding that Plaintiff's depression was not severe and caused only mild limitations. (Id. at 1, 9.) Plaintiff asserts that this finding is contradicted by her treating physician's notes, "by other evidence in the record from mental health professionals, and by Plaintiff's testimony and statements in documentary evidence regarding her depression." (Id. at 9.) Plaintiff next questions why the Magistrate Judge observed that the ALJ's finding regarding Plaintiff's depression was supported by three medical providers when two of the individuals were "[s]tate agency medical consultants, who were two non-examining chart reviewers who never 'provided' any medical care to Plaintiff or ever laid eyes upon her, as 'medical providers.'" (Id. at 11 (referencing ECF No. 21 at 35).) Plaintiff further questions why the Magistrate Judge endorses the ALJ's finding when he "apparently never saw her treatment notes at the Summerville

Behavioral Clinic; his entire discussion of her mental impairments makes no reference to them whatsoever." (Id.)  Therefore, "[c]ontrary to the findings of the Magistrate [Judge]," Plaintiff contends that the record establishes that her "depression went beyond "a slight abnormality" having no more than a "minimal effect on the ability to do basic work activities." (Id. at 12 (citation omitted).)

In her third objection, Plaintiff argues that the Magistrate Judge's finding that the ALJ properly considered the impact of Plaintiff's obesity on her RFC is clearly erroneous. (Id. at 2.) Plaintiff asserts that to reach this finding, the Magistrate Judge (1) ignored the ALJ's failure to evaluate the obesity impairment in his RFC assessment and provide an explanation of the limitations it caused and (2) adopted the non-precedential holdings of other courts in an attempt to relieve the ALJ of his duty under SSR 02-1p[4] to explain "how this impairment affected Plaintiff's ability to perform work-related functions." (Id. at 13-14 (citing, e.g., Coldiron v. Comm'r of Soc. Sec., 391 F. App'x 435, 443 (6th Cir. 2010)).)  In this regard, Plaintiff argues that the ALJ's failure to meet his burden was recognized by the Magistrate Judge when she observed that "it would be a better practice for the ALJ to provide a specific statement as to how obesity was considered at steps four and five, . . . ."  (Id. at 15 (citing ECF No. 21 at 39).)

In light of the foregoing, Plaintiff requests that the court reject the Magistrate Judge's recommendation and either reverse the Commissioner's decision or remand the case for proper application of the correct legal standards. (Id. at 15.)

---

[4] "[O]ur RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002).  "As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." Id. at *7.  "When we identify obesity as a medically determinable impairment (see question 4, above), we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments that we identify." Id.

9

In response to Plaintiff's objections, the Commissioner "respectfully asks the Court to reject Plaintiff's objections and affirm the administrative decision." (ECF No. 26 at 1.)

C.     The Court's Ruling

The court has reviewed Plaintiff's objections to the Magistrate Judge's Report and Recommendation and rules on each issue in turn below.

*1. Whether Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Credibility*

Plaintiff asserts that her credibility was not properly evaluated in accordance with SSR 96-7p.

In his credibility analysis, the ALJ considered Plaintiff's administrative hearing testimony as summarized below:

> [T]he claimant testified that she has a drivers license, but she tries not to drive when she's been taking her pain medication. She has a GED and she went to technical school. She is 5'7 and weighs 325 pounds, and has gained 100 pounds in the last two years because of her inability to move. She has a cane, but she does not use it because it does not help with the pain. She has not worked since her alleged onset date, and she has not looked for work since that time. She is unable to work because of pain in both knees and ankles, and the weight bearing on her joints and back causes constant pain. She cannot walk more than 15 minutes before her left leg goes numb. She usually sits in a recliner and elevates her legs or lies down. She naps every day with pillows all around to get comfortable. When her pain is at its peak, she is immobilized. When she is on the second floor of her house, she has a hard time getting down the stairs. Every day is pretty much a bad day, she feels like she is walking on a broken foot. She doesn't know when her bones are going to collapse, but she has bones that are dead. Standing, walking, and trying to do dishes makes it worse and sitting down and elevating her legs makes it better. She has breathing problems when she has to go up stairs, and she uses her inhaler at least four times a day. When she knows she is going to drive, she will hold off her pain medication until she gets back. She wakes up at 8 am, and it takes her a while to get out of bed, she brushes her teeth, and eats a breakfast bar, goes downstairs, and sits in her recliner and watches television. For lunch she eats frozen meals, and she has to fix it herself. She watches reality television and Judge Judy. She used to play computer games, but she cannot do that anymore. When she isn't watching television, she is reading, but she probably watches television 14 hours a day. She goes to sleep at 11 pm, but does not sleep well. She goes to the store when she has to, but she can only be in the store for 15 minutes at a time. She goes

> swimming when the pool is open. She does not lift more than a soda bottle, but she is able to bring in her own groceries.

(ECF No. 12-2 at 31–32.) This testimony in conjunction with his analysis of the factors set forth in SSR 96–7p led the ALJ to conclude that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, . . . [Plaintiff's] subjective complaints to her physicians, the objective findings documented in her medical records, and the treatment she has required do not support a finding that her severe impairments prevent her from performing all work." (Id. at 32.)

After reviewing the foregoing in the context of Plaintiff's objection, the court is not persuaded that the ALJ failed to properly evaluate Plaintiff's credibility in accordance with SSR 96–7p. Accordingly, the court overrules Plaintiff's objection to the Magistrate Judge's Report and Recommendation that substantial evidence did not support the ALJ's finding as to Plaintiff's credibility.

*2. Whether Substantial Evidence Supports the ALJ's Determination that Plaintiff's Depression was not Severe*

Plaintiff asserts that her depression is a severe impairment.

A severe impairment is one which significantly limits an individual's ability to do basic work activities. 20 C.F.R. §§ 404.1520(c). "'[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (citation omitted). In assessing the severity of mental impairments, agency fact-finders are required to make findings of fact as to four (4) specific criteria, which are commonly referred to as the "paragraph B" criteria. See 20 C.F.R. §§ 404.1520a. The four (4) "paragraph B" criteria are: "Activities of

11

daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). The fact-finder must rate the claimant's degree of limitation in each of the "paragraph B" criteria. Id. at § 404.1520a(c)(4). If the fact-finder rates the claimant's degree of limitation as "none" or "mild" in the first three (3) criteria, and as "none" on the fourth criteria, the fact-finder should generally conclude that the mental impairment is non-severe. Id. at § 404.1520a(d)(1).

In finding that Plaintiff's depression was no more than a mild limitation, the ALJ accorded (1) significant weight to Plaintiff's primary care physician, Dr. Skye Deberry, who the ALJ says opined that Plaintiff's "depression was helped with medication, and resulted in no work related limitations in function" and (2) great weight to state agency medical consultants who the ALJ asserts stated that Plaintiff's "depression is not severe." (ECF No. 12-2 at 35.) Specifically, as to Dr. Deberry, the ALJ observed the following:

> In February 2011, the claimant's primary care physician Dr. Skye N. Deberry, completed a mental medical statement on behalf of the claimant. Dr. Deberry stated the claimant suffered from depression, and had benefited from Cymbalat. Dr. Deberry stated that psychiatric care had not been recommended; noting the claimant to be oriented in time, person, place, and situation; with intact through process; appropriate thought content; normal mood and affect; and good attention, concentration, and memory. Dr. Deberry concluded that claimant did not exhibit any work-related limitations in function due to her mental condition and that the claimant was capable of managing her own funds.

(Id. at 29.) The ALJ then considered the "paragraph B" criteria and observed that Plaintiff's depression imposed mild limitation on her activities of daily living; mild limitation on her social functioning; mild limitation on her concentration, persistence, or pace; and she "had experienced no episodes of decompensation which have been for extended duration." (Id.) Thereafter, the ALJ concluded that "[b]ecause the claimant's medically determinable mental impairments caused no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, they were

12

nonsevere." (Id.)

Upon consideration of the foregoing, the court finds that Plaintiff's allegations of error are unpersuasive and the ALJ's finding with respect to Plaintiff's depression is supported by substantial evidence. Accordingly, the court overrules Plaintiff's objection to the Magistrate Judge's Report and Recommendation that substantial evidence does not support the ALJ's finding regarding Plaintiff's depression.

*3. Whether the ALJ Properly Evaluated Plaintiff's Obesity in her RFC*

Plaintiff contends that she did not receive proper consideration of the impact of obesity on her RFC.

SSR 02-1p defines obesity as "a complex, chronic disease characterized by excessive accumulation of body fat." Id. at 2002 WL 34686281, at *2. SSR 02-1p also recognizes that obesity can cause limitations in all exertional and postural functions. See id. Accordingly, the ALJ must consider a claimant's obesity in making a number of determinations, including whether the individual has a medically determinable impairment, the severity of the impairment, whether the impairment meets or equals the requirements of a listed impairment, and whether the impairment prevents the claimant from performing her past relevant work or other work in the national economy. Id. at *3. When assessing a claimant's RFC, the ALJ is to consider the "effect obesity has upon the [claimant's] ability to perform routine movement and necessary physical activity within the work environment" as the "combined effects of obesity with other impairments may be greater than might be expected without obesity." Id. at *6.

The court observes that in his decision, the ALJ did state that Plaintiff's obesity was a severe impairment. (ECF No. 12-2 at 28.) The ALJ then offered the following assessment of Plaintiff's obesity:

13

> Regarding claimant's obesity, the undersigned has specifically considered Social Security Ruling 02-1p and as well as guidance in the listings regarding potential effects obesity has in causing or contributing to impairments in the musculoskeletal, respiratory, and cardiovascular body systems as set out in Listings 1.0, 3.0, and 4.0 respectively. After a thorough review of the evidence, the undersigned conclude that obesity, by itself, is not medically equivalent to a listed impairment. Further, the undersigned finds that the evidence does not show that the claimant has any impairment that, by itself, meets or equals the requirements of a listing. Additionally, the evidence fails to reveal that claimant has an impairment that, in combination with obesity, meets or equals the requirements of a listing. In making this determination, the undersigned has specifically considered Listings 1.0, 3.0, and 4.0 as well as guidance contained in those listings about the effects of obesity. Finally, the undersigned has determined that claimant's multiple impairments, including obesity; do not have effects that in combination are equivalent in severity to a listed impairment.

(ECF No. 12-2 at 30.) The ALJ further analyzed Plaintiff's obesity in connection with her other impairments to determine Plaintiff's RFC and ability to engage in work activity:

> While the claimant's medical records do not reveal that her severe impairments are disabling, the undersigned has given her the benefit of the doubt that these conditions do impose some limitations. The evidence of record supports a finding that claimant's severe impairments limit her to light work with some additional limitations. Specifically, the evidence reveals that claimant can lift and carry up to 20 pounds; she can stand and walk only two hours in an eight hour work day; occasionally use the left lower extremity for foot controls; cannot climb ladders, ropes, or scaffolds; occasionally perform the other postural movements; and must avoid concentrated exposure to extreme temperatures and respiratory irritants and all exposure to hazards. This finding is supported by claimant's chronic back, ankle, and knee pain; asthma; and obesity.

(Id. at 34.)

Upon consideration of the above-referenced portions of the ALJ's decision, the court finds that the ALJ properly considered Plaintiff's obesity in accordance with the framework set forth in Social Security Ruling 02-1p. Accordingly, the court overrules Plaintiff's objection to the Magistrate Judge's Report and Recommendation regarding whether the ALJ properly evaluated Plaintiff's obesity in her RFC.

## IV.     CONCLUSION

Upon careful consideration of the entire record, the court **AFFIRMS** the final decision of

the Commissioner denying Plaintiff's claim for Disability Insurance Benefits. The court **ACCEPTS** the Magistrate Judge's Report and Recommendation and incorporates it herein by reference.

    **IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

March 30, 2015
Columbia, South Carolina